**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**UTICA MUTUAL INSURANCE COMPANY,**

                  **Plaintiff,**

  vs.                                           **6:14-CV-1558
                                                   (MAD/TWD)**

**AMERICAN RE-INSURANCE COMPANY**
**a/k/a MUNICH REINSURANCE AMERICA, INC.,**

                  **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**FELT, EVANS LAW FIRM**               **KENNETH L. BOBROW, ESQ.**
4-6 North Park Row
Clinton, New York 13323
Attorneys for Plaintiff

**SIMPSON, THACHER LAW FIRM -**     **MARY KAY VYSKOCIL, ESQ.**
**NEW YORK OFFICE**                   **ALEXANDER BLANK SIMKIN, ESQ.**
425 Lexington Avenue                **JONATHAN S. ZELIG, ESQ.**
New York, New York 10017-3954
Attorneys for Plaintiff

**HUNTON, WILLIAMS LAW FIRM -**     **SYED S. AHMAD, ESQ.**
**MCLEAN, VIRGINIA OFFICE**
1751 Pinnacle Drive
Suite 1700
McLean, Virginia 22102
Attorneys for Plaintiff

**RUBIN, FIORELLA LAW FIRM**         **BRUCE M. FRIEDMAN, ESQ**
630 Third Avenue                       **JAMES E. MERCANTE, ESQ.**
New York, New York 10017
Attorneys for Defendant

**PETRONE, PETRONE LAW FIRM -**     **LORI E. PETRONE, ESQ.**
**UTICA OFFICE**
1624 Genesee Street
Utica, New York 13502
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On December 22, 2014, Defendant, American Re-Insurance Company *a/k/a* Munich Reinsurance America, Inc. ("MRAm"), removed this case pursuant to 28 U.S.C. §§ 1441 and 1446. *See* Dkt. No. 1. On January 21, 2015, Plaintiff Utica Mutual Insurance Company ("Utica") filed a motion to remand, which is currently before the Court. *See* Dkt. No. 13.

## II. BACKGROUND

### A. The state court action

On December 24, 2013, Utica filed a complaint in state court alleging breach of contract, and asked the state court to issue a declaratory judgment pursuant to C.P.L.R. § 3001, to clarify "the parties' rights and obligations under certain reinsurance contracts entered into between Utica and [MRAm]." Dkt. No. 15-1 at 3. The complaint also named Transatlantic Reinsurance Company ("Transatlantic"), "a corporation organized under the laws of the State of New York, with its principal place of business in New York, New York." *Id.* at 4. As Utica is also incorporated under New York law, with its principal place of business is in New Hartford, New York, MRAm was prevented from removing the case to federal court because complete diversity did not exist between the parties. *Id.* On November 24, 2014, the state court severed Utica's claims against MRAm and Transatlantic. *See* Dkt. No. 15-4. The court reasoned that

> [e]ven if permissive joinder of the two defendants in this matter may be proper, severance pursuant to CPLR § 1003 is appropriate in the interest of justice as a matter of discretion. Litigation involving these two defendants would impose upon each an undue burden because it would cause each of them to be indirectly involved in plaintiff's claims against the other. This is particularly true in the case of discovery, motion practice, and other pre-trial proceedings. Further, as a matter of judicial economy and

2

> consistency, severance will afford defendant Munich Re the
> opportunity to remove the claim against it to federal court where a
> similar claim involving the same parties, and the same or similar
> reinsurance contracts has been adjudicated, and is on appeal. It is
> also likely that severance will afford each defendant with a more
> expeditious resolution of the respective claims against it.

*Id.* at 6. Utica has appealed the severance order to the Fourth Department Appellate Division. *See* Dkt. No. 13-2 at 5.

**B.      Utica's motion to remand**

Utica argues that "Munich Re cannot meet its burden to show that removal is appropriate because removability can only be created by *Utica's voluntary* conduct." Dkt. No. 13-1 at 8 (emphasis in original). Accordingly, Utica claims that removal is improper because diversity of citizenship was created "without voluntary action by the plaintiff." *Id.* at 9 (citing *310-318 Midtown Equities, LLC v. Atl. Cas. Ins. Co.*, 2014 WL 2451594, *1 (S.D.N.Y. May 16, 2014)). Utica also cites *Miller v. Fulton*, 113 F. Supp. 2d 1035, 1039 (S.D. Miss. 2000), for the proposition that a severance order is an involuntary action, and removal is not proper when the plaintiff opposes severance. *Id.* at 10.

**C.      MRAm's opposition**

MRAm argues that removal was proper pursuant to 28 U.S.C. §§ 1332(a) and 1446(b)(3) because "[t]he statute[s] contemplate[] that the time for removal does not begin to run until all obstacles to removal have been eliminated." Dkt. No. 15-5 at 8. MRAm alleges that Utica's joinder of Transatlantic was one of the obstacles contemplated by the statutes. *Id.* Additionally, MRAm argues that Utica joined MRAm and Transatlantic purely to avoid a Northern District decision that "granted summary judgment in MRAm's favor against Utica on a legal issue which

3

was common to both cases filed by Utica against MRAm[,]" and therefore the voluntary-involuntary rule should not allow Utica "to defeat diversity under the circumstances."[1]  *Id.* at 9.

MRAm then argues that even if the voluntary-involuntary rule applies, there is an exception based on the fraudulent misjoinder doctrine.  *Id.* at 10.  MRAm claims that this concept "has been applied in numerous cases in other New York Districts Courts," as well as in the Eastern and Southern Districts.  *Id.* at 11 (citing *Humphrey v. Riley*, No. 1:14-CV-80, 2014 WL 3400964 (N.D.N.Y. July 10, 2014)) (other citations omitted).  Accordingly, MRAm asserts that "[t]he citizenship of Transatlantic should be disregarded in determining diversity jurisdiction because it is not and never was properly joined to Utica's claims to MRAm, as established by the [state court] Decision."  *Id.*

Finally, MRAm argues that "concern over judicial economy weighs in favor of maintaining diversity jurisdiction."  *Id.* at 15.  In support of this position, MRAm argues that Utica's appeal is frivolous, and that even if the state court severance order was reversed, "discovery in federal court is readily transferrable to the state court."  *Id.* at 16.

**D.    Utica's reply**

In Utica's reply memorandum of law, it reiterates that the voluntary-involuntary rule dictates remand, because "[t]he express purpose of this bright-line rule . . . 'is to protect against the possibility that a party might secure a reversal on appeal in state court of the nondiverse party's dismissal, 'which would create a 'renewed lack of complete diversity in the state court

---

[1] The Court notes that this summary judgment motion was vacated and remanded by the Second Circuit on December 4, 2014, over two months before MRAm filed its opposition to Utica's motion to remand currently before the Court.  *See Utica Mut. Ins. Co. v. Munich Reinsurance Am.*, No. 13-4170-CV, 594 Fed. Appx. 700 (2d Cir. Dec. 4, 2014).

4

action.'" Dkt. No. 17 at 8 (quoting *Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40 n.2 (2d Cir. 1980)).

Utica also advances a number of arguments in opposition to MRAm's asserted fraudulent misjoinder exception. *Id.* at 11-15. First, Utica claims that MRAm's removal based on fraudulent misjoinder is untimely, because "[i]n the context of fraudulent joinder claims, the statute requires removal within thirty days 'from the time defendants can first ascertain that a party has been fraudulently joined.'" *Id.* at 12 (quoting *Deming v. Nationwide Mut. Ins. Co.*, No. Civ.A 3:03CV1225, 2004 WL 332741, *5 (D. Conn. Feb. 14, 2004). Second, Utica asserts that MRAm cannot rely on fraudulent joinder as grounds for removal, because it was not included in MRAm's notice of removal. *Id.* at 12-13. Third, Utica states that the Second Circuit has not recognized fraudulent misjoinder, and therefore this Court should not create an exception to "the voluntary-involuntary rule based on a theory not recognized in this Circuit." *Id.* at 14. Finally, Utica asserts that MRAm has not proven by clear and convincing evidence that Transatlantic was fraudulently misjoined, and in fact there is "nothing to suggest that Utica committed fraud aside from vague and conclusory assertions that Utica[] engaged in 'wrongful conduct.'" *Id.* at 15.

### III. DISCUSSION

**A.     Standard of review**

Federal district courts are courts of limited jurisdiction. Under 28 U.S.C. § 1332(a), a federal court has jurisdiction over the subject matter of a civil action where the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states. *See* 28 U.S.C. § 1332(a). A defendant may remove to federal court "'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *Shapiro v. Logistec USA Inc.*, 412 F.3d 307, 309-10 (2d Cir. 2005)

(quoting 28 U.S.C. § 1441(a)). However, once a case has been removed, it must be remanded "'[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'" *Id.* at 310 (quoting 28 U.S.C. § 1447(c)). Where, as here, jurisdiction is asserted by a defendant in a removal petition, the defendant bears the burden of establishing that removal is proper. *See Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (citations omitted). If there are any doubts as to removability, they are resolved against removability "out of respect for the limited jurisdiction of the federal courts and the rights of the states." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (citation omitted). Although there is a presumption that the court has jurisdiction when the matter is brought in federal court in the first instance, "[a] defendant removing a case to federal court encounters instead the general principle that removal is disfavored and remand favored." *Pollock v. Trustmark Ins. Co.*, 367 F. Supp. 2d 293, 296-97 (E.D.N.Y. 2005) (citation omitted).

**B.     Analysis**

   *1. The voluntary-involuntary rule*

According to the Second Circuit, "the involuntary dismissal of non-diverse parties does not make an action removable." *Quinn*, 616 F.2d at 40 n.2 (citation omitted). The Second Circuit has explained the purpose of the so-called "voluntary-involuntary" rule as follows:

> [It] protect[s] against the possibility that a party might secure a reversal on appeal in state court of the non-diverse party's dismissal, producing renewed lack of complete diversity in the state court action, a result repugnant to the requirement in 28 U.S.C. § 1441 that an action, in order to be removable, be one which could have been brought in federal court in the first instance.

*Id.* "The determinative factor in the [*Quinn*] decision . . . was not that the dismissal was voluntary, but rather that it was final." *LGP GEM Ltd. v. Cohen*, 636 F. Supp. 881, 883 (S.D.N.Y. 1986).

Utica cites two cases in support of remand under the voluntary-involuntary rule. In the first case, *Midtown*, the court remanded where "the sole basis for removal is the diversity of citizenship created by the severance order[,]" and "[the plaintiff] opposed the severance order." *310-318 Midtown Equities, LLC*, 2014 WL 2451594, at *2. Further, the court found that the removing party's "assertion that it [was] likely to prevail on appeal in support of the severance order [was] irrelevant." *Id.* Although MRAm asserts that the procedural posture of *310-318 Midtown Equities, LLC* renders it materially different from the current case, the legal principals articulated and applied in *Midtown* would not change if the defendant was named in the complaint, rather than joined subsequent to the complaint as a third party.

In *Miller v. Fulton*, the court remanded because it could not conclude that the removing party had "satisfied its burden of establishing that the state court intended to sever the claims . . . as opposed to merely ordering separate trials." *Miller*, 113 F. Supp. 2d at 1039. However, the court went on to state that, "even were the court persuaded that the state court had severed the claims, given that [the plaintiff] opposed the severance, the court would nonetheless remand the case based on the voluntary-involuntary rule." *Id.* MRAm argues that *Miller* is distinguishable because the court based remand on "the state court's ordering of separate trials[,]" and "not on the basis of the severance of claims." Dkt. No. 15-5 at 15. However, as the court stated that they would have remanded even if the claims had been severed due to the voluntary-involuntary rule, MRAm's attempt to distinguish *Miller* from the present case is not convincing.

Additionally, MRAm's assertion that Utica's appeal is frivolous has no bearing on the Court's decision, because according to *Quinn*, "the possibility" of reversal on appeal is the purpose behind the voluntary-involuntary rule. Dkt. No. 15-5 at 15; *Quinn*, 616 F.2d at 40 n.2. Therefore, Utica's likelihood of success on appeal does not change the Court's analysis.

7

The situation *Quinn* attempts to prevent is present in the current case. Utica has appealed the state court's severance order to the Fourth Department, meaning that the severance order is not yet final under *Quinn*. Dkt. No. 13-2 at 5. As doubts regarding removability are resolved against removal, the current situation requires that the Court remand this case based on the voluntary-involuntary rule, unless MRAm can establish that removal is warranted despite Utica's opposition to the severance order currently on appeal.

However, as set forth below, MRAm may not rely on the fraudulent misjoinder exception, because the grounds for removal were apparent at the latest, by February 20, 2014, the date MRAm filed its answer in the state court action. *See* Dkt. No. 1-2 at 11.

### 2. *Timeliness of removal based on fraudulent misjoinder*

According to the federal removal statute, 28 U.S.C. § 1446(b), "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based. . . ." *Id.* "The essential command of the statute is that a defendant must remove the action promptly after the grounds for removal become apparent." *Trustees of Masonic Hall & Asylum Fund v. PriceWaterhouseCoopers LLP*, Nos. 08 Civ. 10495, 08 Civ. 10494, 2009 WL 290543, *7 (S.D.N.Y. Feb. 6, 2009). Specifically, "[a] case is removable when the initial pleading 'enables the defendant to intelligently ascertain' removability from the face of such pleading, so that in its petition for removal[, the] defendant can make a short and plain statement of the grounds for removal as required [by] 28 U.S.C. § 1446(a).'" *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205-06 (2d Cir. 2001) (quoting *Richstone v. Chubb Colonial Life Ins.*, 988 F. Supp. 401, 403 (S.D.N.Y. 1997)). "A pleading enables a defendant to intelligently ascertain removability when it provides 'the necessary facts to

8

support [the] removal petition.'" *Id.* at 206 (quoting *Rowe v. Marder*, 750 F. Supp. 718, 721 (W.D. Pa. 1990)).

Even assuming that the fraudulent misjoinder theory applies, the Court agrees with Utica that MRAm "knew the basis for its fraudulent misjoinder claim no later than February 20, 2014, when it filed its answer. Accordingly, [MRAm] was required to file a notice of removal on the basis of its fraudulent [mis]joinder claim within 30 days of February 20, 2014 at the latest." Dkt. No. 17 at 12. "'While few courts have expressly addressed the issue of when a removal notice must be filed in a case involving fraudulent joinder, most reported opinions have enforced a 30-day removal period that begins to run *from the time defendants can first ascertain that a party has been fraudulently joined.*'" *Deming*, 2004 WL 332741 at *5 (quoting *Delaney v. Viking Freight Inc.*, 41 F. Supp. 2d 672, 674 n.2 (E.D. Tex. 1999)) (emphasis in original). Although *Deming* analyzed removal based on a fraudulent joinder claim, which is distinct from a fraudulent misjoinder claim,[2] the difference is not applicable to the time frame within which removal is allowed. Further, MRAm admits that they understood "Utica's motivation for joining Transatlantic and MRAm as defendants in the same action." Dkt. No. 15-5 at 9. Accordingly, the thirty day removal period was triggered at the latest on February 20, 2014, the date MRAm filed its answer in the state court action where one of MRAm's affirmative defenses alleged that "Utica

---

[2] Fraudulent misjoinder is distinct from fraudulent joinder, "a doctrine that is widely recognized in the federal courts." *In re Propecia (Finasteride) Product Liability Litigation*, Nos. 12-MD-2331, 12-CV-2049, 2013 WL 3729570, *3 (E.D.N.Y. May 17, 2013). In a fraudulent joinder claim, "a diverse defendant argues that the plaintiff is attempting to join a non-diverse defendant against whom the plaintiff has no real claim solely to defeat federal jurisdiction." *Id.* at *4 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998)). In contrast, fraudulent misjoinder is present when "a plaintiff has added claims to the complaint – either claims by other non-diverse plaintiffs or claims against other non-diverse defendants – which, although perhaps valid, are nevertheless not properly joined under the applicable permissive joinder rules." *Id.*

has improperly joined Transatlantic Reinsurance Company as a defendant in this action for the sole purpose of defeating complete diversity of citizenship and to prevent removal to Federal Court by MRAm as a matter of right." Dkt. No. 1-2 at 10-11. Therefore, removal on the grounds of fraudulent misjoinder is untimely.

The approach New York district courts have adopted regarding fraudulent misjoinder supports the Court's interpretation of the removal time frame.

> The typical situation in which fraudulent misjoinder is argued involves a complaint for which diversity is lacking on its face. The defendant has nevertheless removed the case to federal court, and has asked the court to sever the claims involving the non-diverse parties and remand them to state court, while retaining jurisdiction over only the claims as to which diversity jurisdiction exists.

*In re Propecia (Finasteride) Product Liability Litigation*, Nos. 12-MD-2331, 12-CV-2049, 2013 WL 3729570, *4 (S.D.N.Y. May 17, 2013). In *Propecia*, the court agreed with other court's reasoning that "the fraudulent misjoinder doctrine can be applied to sever and remand non-diverse claims." *Id.* at *8. Further, a critical question for a federal court to consider when applying the fraudulent misjoinder doctrine is whether state or federal law governs "the question of proper joinder." *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 379 (S.D.N.Y. 2006). In order to consider the severance of non-diverse claims as in *Propecia*, or to decide which joinder law applies as in *Federal Insurance Company*, the case must have been removed before the non-diverse parties are severed.[3] Presently, the Court may not decide whether state or federal joinder law applies, because state law was already applied by the state court, and the Court has no opportunity to sever and remand the improperly joined parties.

---

[3] In further support of this interpretation, the Court was unable to find any case law that addressed the fraudulent misjoinder doctrine when a state court had severed the non-diverse parties prior to removal.

10

Based on the foregoing, the Court remands this case to the New York State Supreme Court of Oneida County for all further proceedings.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Utica's motion to remand is **GRANTED**; and the Court further

**ORDERS** that this action is **REMANDED** to the New York State Supreme Court in Oneida County for all further proceedings; and the Court further

**ORDERS** that th Clerk is directed to mail a certified copy of this Memorandum-Decision and Order to the Clerk of the Supreme Court of the State of New York in Oneida County and instruct him to file the Memorandum-Decision and Order in *Utica Mut. Ins. Co. v. Am. Re-Insurance Co. a/k/a Munich Reinsurance Am. Co., Inc., and Transatlantic Reinsurance Co.*, Index No. CA2013-2587; and the Court further

**ORDERS** that the Clerk of the Court shall close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 27, 2015
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge